UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

**THE TRADE GROUP, INC.,**

   Plaintiff,

v.                                                        No. 4:23-cv-00555-P

**BTC MEDIA, LLC, ET AL.,**

   Defendants.

## MEMORANDUM OPINION & ORDER

Before the Court is Plaintiff The Trade Group, Inc.'s ("TTG") Motion for Summary Judgment against Defendant BTC Media, LLC ("BTC"). ECF No. 82. After reviewing the Motion, evidence, and relevant case law, the Court finds that genuine issues of material fact exist that preclude the entry of summary judgment. Therefore, the Motion is **DENIED**.

## BACKGROUND

TTG is a company specializing in the design and management of trade show exhibits, conferences, and corporate events. TTG offers a range of services including booth construction, event logistics, and on-site management, and has established itself as a key player in the event production industry.

In 2021, BTC hired TTG to provide services for the Bitcoin 2021 conference. TTG was responsible for constructing exhibitor booths and managing event logistics. The event was successful, and after a post-event reconciliation of expenses, BTC paid TTG in full for their work. Building on this success, BTC engaged TTG once again to manage the Bitcoin 2022 conference. The scope of work included not only booth construction but also comprehensive event management services. As preparations for the Bitcoin 2022 conference progressed, TTG used a Google Sheet to track costs and communicate estimates to BTC.

This is where the problems begin. In early 2022, TTG presented BTC with the Google Sheet estimating a total cost of $17 million for Bitcoin 2022, which was significantly higher than BTC's budget. BTC expressed concerns about the high costs and requested a detailed breakdown. Tensions escalated when BTC proposed paying third-party vendors directly and only paying TTG a markup, a suggestion that TTG vehemently opposed. In the months leading up to the event, both parties continued negotiations. TTG assured BTC that the markups on third-party services would be reasonable, typically within a 10-20% range. However, as the event approached, BTC became increasingly concerned about the accuracy and transparency of TTG's billing practices.

Bitcoin 2022 took place in April 2022 and was a smashing success. During the event, TTG continued to update the Google Sheet with costs and expenses. After the event, TTG provided BTC with a final invoice totaling approximately $17.2 million. BTC disputed several charges, claiming they were unauthorized and significantly marked up beyond agreed terms.

BTC further discovered perceived discrepancies between the Google Sheet and TTG's internal accounting records. These discrepancies raised concerns about the accuracy of the invoices and led BTC to request an independent audit. TTG conducted an audit through their chosen firm, which BTC disputed as biased and incomplete.

As a result of the ongoing disputes, TTG filed a lawsuit in Texas state court in May 2023 against BTC seeking recovery of the unpaid amounts. TTG's claims include breach of contract, suit on account, and unjust enrichment. TTG also seeks to pierce the corporate veil to hold BTC Inc. liable for BTC Media's obligations. BTC removed the lawsuit to federal court in June of 2023.

On July 3, 2023, BTC filed a motion to dismiss TTG's amended complaint, arguing the Court lacked jurisdiction or in the alternate should transfer the case to the Southern District of Florida. The Court denied that motion on September 22.

In response to new evidence, TTG amended its complaint again on December 18, 2023, to include BTC Inc. as a defendant. BTC Media, in

turn, filed a motion for leave to file additional counterclaims under the Texas Deceptive Trade Practices Act and for common-law fraud the next day, alleging that TTG misrepresented booth prices and submitted inaccurate invoices. After a January 2024 hearing on the issue of whether it was too late to file the counterclaims, the Court leave.

On February 26, 2024, TTG filed the present motion for summary judgment, arguing that no genuine issues of material fact existed and that they are entitled to judgment as a matter of law on both their claims and BTC's counterclaims. That motion is full briefed and ripe for the Court's review.

## LEGAL STANDARD

Summary judgment is proper if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). A dispute is "genuine" if the evidence presented would allow a reasonable jury to return a verdict in favor of the non-movant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 242–43 (1986). A fact is "material" if it would affect a case's outcome. *Id.* at 248. Generally, the "substantive law will identify which facts are material," and "[f]actual disputes that are irrelevant or unnecessary will not be counted." *Id.* In assessing whether summary judgment is appropriate, the Court views evidence in the light most favorable to the nonmovant. *Cunningham v. Circle 8 Crane Servs., LLC*, 64 F.4th 597, 600 (5th Cir. 2023). The Court may rely on any evidence of record but need only consider those materials cited by the parties. FED. R. CIV. P. 56(c)(1)–(3); *see generally Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (noting summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law"). But the Court need not mine the record for evidence supporting the nonmovant; the burden falls on the moving party to simply show a lack of evidence supporting the nonmovant's case. *See Malacara v. Garber*, 353 F.3d 393, 404–05 (5th Cir. 2003).

## ANALYSIS

The Court finds that several genuine issues of material fact preclude the entry of summary judgment in favor of TTG.

*First*, regarding the validity and authorization of charges, TTG asserts that all charges invoiced to BTC Media were agreed upon and reasonable. *See* ECF No. 83 at 26–28. TTG contends that the invoices reflect the services provided and are consistent with the Parties' agreements. *Id*. However, BTC Media disputes the validity of specific charges, arguing that some were unauthorized or improperly marked up. *See* ECF No. 92 at 13–20. BTC Media presents evidence suggesting that TTG's accounting practices were manipulative, creating genuine disputes over the validity of the charges. *Id* at 40. For example, BTC Media argues that TTG's markups were unreasonably high and exceeded the customary rates agreed upon by the Parties. *Id*. Given these conflicting accounts, the Court finds that there are genuine issues of material fact regarding the validity and authorization of the charges, which necessitate a trial to resolve.

*Second*, the existence of a clear agreement between the parties is in dispute. TTG claims there was a clear and enforceable agreement regarding the services and charges for Bitcoin 2022, relying on documentation and prior dealings to support its position. *See* ECF No. 83 at 29–38. In contrast, BTC Media contends that there was no meeting of the minds on the essential terms, particularly the price, which is fundamental to contract formation. *See* ECF No. 92 at 31–36. BTC Media argues that the Parties' understanding of the pricing terms was inconsistent, raising a genuine issue of material fact about whether a binding agreement existed. *Id*. The Court finds that these conflicting assertions about the existence of a clear agreement require a fact-finder to determine the credibility of the Parties' positions.

*Third*, the issue of unjust enrichment presents genuine factual disputes. TTG claims that BTC Media was unjustly enriched by benefiting from TTG's services without full payment and seeks recovery under this principle. *See* ECF No. 83 at 38–39. BTC Media, however, disputes the applicability of unjust enrichment, arguing that it is not a

recognized standalone cause of action in Texas and challenging the factual basis of the enrichment claim. *See* ECF No. 92 at 28–31. The Court finds that determining whether BTC Media was unjustly enriched involves factual questions about the services provided and the payments made, which are best resolved at trial.

Lastly, the veil-piercing claim involves genuine issues of material fact. TTG seeks to hold BTC Inc. liable as BTC Media's alter ego, citing financial interdependence and misuse of the corporate form to avoid liabilities. *See* ECF No. 83 at 41–47. TTG argues that piercing the corporate veil is necessary to prevent injustice. *Id.* at 45–46. BTC Media, on the other hand, argues that TTG has not provided sufficient evidence to support the alter ego theory, contending that corporate formalities were observed and that there is no basis for piercing the corporate veil. *See* ECF No. 92 at 40–44. The Court finds that determining whether BTC Inc. should be held liable as BTC Media's alter ego involves complex factual questions that too are best resolved at trial.

## CONCLUSION

For the foregoing reasons, the Court concludes that genuine issues of material fact exist that preclude the entry of summary judgment. Accordingly, The Trade Group, Inc.'s Motion for Summary Judgment is **DENIED** (ECF No. 82).

**SO ORDERED** on this **3rd day of June 2024.**

_____
Mark T. Pittman
UNITED STATED DISTRICT JUDGE