UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

**THE TRADE GROUP, INC.,**

   Plaintiff,

v.                                                           **No. 4:23-cv-00555-P**

**BTC MEDIA, LLC, ET AL.,**

   Defendants.

## MEMORANDUM OPINION & ORDER

Before the Court are The Trade Group's ("TTG") Motions to Exclude the Testimony of BTC's Proposed Experts Gary Durham, Dr. Kelly Semrad, David Bailey, and Didier Lewis. (ECF Nos. 102, 105, 108). For the reasons set forth below, TTG's Motions are **DENIED**.

## BACKGROUND

This case centers around a dispute between TTG and BTC over the financial ramifications of their business interactions, particularly surrounding the Bitcoin 2022 event. At the heart are disagreements over alleged overcharges and lost profits in planning and hosting Bitcoin 2022 in Miami. TTG seeks to exclude the expert testimonies of BTC CEO David Bailey and CFO Didier Lewis as well as Dr. Kelly Semrad and Mr. Gary Durham.

## LEGAL STANDARD

Under Federal Rule of Evidence 702, "a witness who is qualified as an expert by knowledge, skill, experience, training, or education" may give opinion testimony if "scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue." This "imposes a special obligation upon a trial judge to 'ensure that any and all scientific testimony . . . is not only relevant, but reliable.'" *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 147 (1999) (quoting *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S.

579, 589 (1993)). *Daubert* lays out a non-exhaustive list of factors to determine whether an expert's testimony is admissible, including whether: a theory can be tested; it is subject to peer review; there is a known or potential rate of error; or the theory is generally accepted. *See Kumho*, 526 U.S. at 149–150 (quoting *Daubert¸* 509 U.S. at 592–94). However, not all of these factors may be relevant in evaluating the admissibility of an expert's testimony. *Id.* The law "grants the trial judge broad latitude to determine" what factors are appropriate measures of reliability and relevance. *Id.* at 153.

Further, the expert testimony must be relevant, not simply in the sense that all testimony must be relevant under Rule 402, but the expert's proposed opinion would assist the trier of fact to understand or determine a fact in issue. *Daubert*, 509 U.S. at 591–592. Rule 702 requires a proponent of expert testimony to demonstrate a "valid scientific connection to the pertinent inquiry as a precondition to admissibility." *Id.* at 592.

## ANALYSIS

As noted, TTG seeks to exclude the testimony of four experts all for various reasons. The Court addresses each expert and TTG's corresponding arguments below.

### A. Gary Durham

TTG seeks to exclude Gary Durham's testimony on the grounds that it is unreliable and irrelevant. *See generally* ECF No. 103. Specifically, TTG argues that Durham's methodology is flawed and that his opinions are based on incomplete information given Durham's role was to verify the costs TTG claims it incurred and to assess the reasonableness of those costs. *Id.* at 8–10. Although Durham had multiple opportunities to review TTG's documents, TTG argues that he failed to accurately compile the costs, thereby rendering his opinions unreliable. *Id.* at 8–9.

The Court finds that while Durham's methodology, like most, could possess flaws, it's sufficiently reliable for the purposes of expert testimony. Durham reviewed numerous documents and provided a detailed analysis of the costs and markups. His methodology involved a thorough examination of TTG's invoices and other financial records, and

he explained the basis for his conclusions. *See e.g.* ECF No. 134-1 at 35–39. Any perceived deficiencies in his methodology go to the weight of his testimony, not its admissibility. Durham's testimony also highlights the potential disconnect between TTG's Google Sheet entries and the underlying accounting documents. *See generally* ECF No. 134-1. This analysis is vital because it could suggest TTG's billing practices may have been designed to obscure true charges. This information is essential for the jury to understand the potential manipulation of financial records and assess the legitimacy of TTG's charges. For these reasons, the Court **DENIES** TTG's motion to exclude Gary Durham's expert testimony (ECF No. 102).

## B. Dr. Kelly Semrad

TTG seeks to exclude the testimony of Dr. Kelly Semrad on the grounds that it is unreliable and irrelevant. *See generally* ECF No. 106. TTG argues that Semrad's opinions are based on insufficient facts and data, and that she lacks the necessary expertise to opine on the reasonableness of TTG's markups. *Id.* at 6–9. Semrad admitted that she did not have access to certain critical information, such as a written contract detailing TTG's scope of work. *See* ECF No. 107 at 94.

However, Dr. Semrad's testimony is particularly relevant because it sets a benchmark for evaluating TTG's markups for Bitcoin 2022. By comparing TTG's charges with industry standards, Dr. Semrad provides a clear framework for the jury to assess whether TTG's pricing was reasonable. Her analysis is based on sufficient data and reliable principles, aligning with the requirements of Rule 702. Moreover, her testimony offers the jury a critical reference point for determining if TTG's practices deviated from industry norms. For these reasons, the Court **DENIES** TTG's motion to exclude Dr. Semrad's expert testimony (ECF No. 105).

## C. David Bailey and Didier Lewis

TTG seeks to exclude the expert testimony of BTC's CEO, David Bailey, and CFO, Didier Lewis, on the grounds that Bailey and Lewis were untimely disclosed. *See* ECF No. 109 at 1.

3

The Court set an October 20, 2023 deadline for Initial Designations of Experts, which was later extended to November 10, 2023. *See* ECF Nos. 16, 23. BTC filed a Motion for Leave to File Counterclaims on December 19, 2023, stating they did not seek to extend any existing deadlines. *See* ECF No. 41 at 1. TTG expressed concerns that BTC's counterclaims for lost profits would require expert testimony, which typically involves a highly fact-intensive analysis. *See* ECF No. 48 at 23. The Court's Order invited the Parties to submit modifications to mitigate prejudice to TTG, but BTC did not request an extension for Initial Designations. *See* ECF Nos. 57 at 3–4; 59. In January 2024, BTC served Supplemental Expert Witness Disclosures identifying Bailey and Lewis as experts on BTC's lost profits under their counterclaims. *See* ECF No. 110 at 11–14.

Appealing to Federal Rule of Civil Procedure 37(c)(1), TTG argues BTC's failure to timely disclose these expert witnesses is neither substantially justified nor harmless, warranting exclusion of their testimony. *See* ECF No. 109 at 5. Further, TTG opines that BTC made multiple representations to the Court that they did not seek to designate experts for their counterclaims, the absence of a request to extend the Initial Designation deadline was prejudicial to TTG given their late disclosure. *Id.* at 6–7.

However, BTC has consistently maintained that Bailey and Lewis will offer lay opinions under Federal Rule of Evidence 701, which allows business owners or officers to testify about the value or projected profits of their business based on personal knowledge. *See* ECF No. 58 at 4–5. Both Bailey and Lewis have extensive firsthand knowledge of BTC's financial operations and can provide valuable insights into the company's lost profits. The Fifth Circuit permits such testimony under Rule 701 if the witness has direct knowledge of the business accounts underlying the profit calculation. *See Miss. Chem. Corp. v. Dresser-Rand Co.*, 287 F.3d 359, 373-74 (5th Cir. 2002).

TTG does not dispute Bailey and Lewis's knowledge of the company's finances but contends that their testimony constitutes expert opinion requiring timely disclosure under Rule 26(a)(2). *See* ECF No. 109. at 7–8. As explained, out of an abundance of caution, TTG supplemented their

disclosures to include Bailey and Lewis as expert witnesses under Rule 702, likely anticipating potential objections from TTG. Given their extensive personal knowledge and the supplemental disclosures, any prejudice to TTG is minimal. Moreover, the testimonies will assist the jury in understanding the financial impact of the alleged damages and are therefore admissible. For these reasons, the Court **DENIES** TTG's motion to exclude David Bailey and Didier Lewis's expert testimony (ECF No. 108).

## CONCLUSION

For the foregoing reasons, the Court concludes that The Trade Group's three motions to exclude expert testimony are **DENIED** (ECF No. 102, 105, 108).

**SO ORDERED** on this **5th day of June 2024.**

Mark T. Pittman
UNITED STATED DISTRICT JUDGE