UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

**THE TRADE GROUP, INC.,**

   Plaintiff,

v.                                            No. 4:23-cv-00555-P

**BTC MEDIA, LLC, ET AL.,**

   Defendants.

### MEMORANDUM OPINION & ORDER

Before the Court is Defendants' Motion for Rule 37(e) Sanctions against Plaintiff based upon spoliation of evidence by Plaintiff's employee Neeshu Hajra. ECF No. 149. After expediting briefing on the Motion (ECF No. 152), conducting a hearing on the Motion (ECF No. 158), and reviewing both Parties' arguments and relevant case law, the Court determines that the Motion should be and is hereby **GRANTED**.

### BACKGROUND

This case boils down to a breach of contract dispute. BTC signed a contract with TTG to put on Bitcoin 2022 in Miami. This came after a successful pairing between the two Parties in putting on Bitcoin 2021. Unfortunately, problems quickly arose in the preparation of Bitcoin 2022. In early 2022, TTG presented BTC with the Google Sheet estimating a total cost of $17 million for Bitcoin 2022, which was set to take place in April 2022. That was significantly higher than BTC's budget. BTC expressed concerns about the high costs and requested a detailed breakdown. Tensions escalated when BTC proposed paying third-party vendors directly and only paying TTG a markup, a suggestion that TTG vehemently opposed.

TTG's Neeshu Hajra was the lead salesman negotiating with BTC and is now a focal point of the Parties' lawsuit. According to BTC, TTG has produced very few text messages originating from Mr. Hajra. At his deposition, Mr. Hajra claimed that he did not delete any text messages.

Shortly thereafter, through the deposition of one of Mr. Hajra's colleagues, the tune changed. Jeremy Crase, a fellow TTG employee, testified that his messages with Mr. Hajra had been deleted through an auto-delete setting featured on iPhones. Two weeks after that deposition, BTC learned through the deposition of TTG's corporate representative that Mr. Hajra *also* had this auto-delete function set on his phone and that all of his text messages before June 2022 had been deleted. After BTC raised this issue in its response to TTG's Motion for Summary Judgment, the two sides met to discuss their jury charge and BTC included a spoliation instruction.

On May 20, TTG filed a motion in limine to exclude any evidence concerning these deleted text messages from being mentioned at trial. A week following mediation with United States Magistrate Judge Hal Ray, BTC filed the present Motion, which is now ripe for the Court's review.

## LEGAL STANDARD

The loss of electronically stored information ("ESI") is governed by Federal Rule of Civil Procedure 37(e), which provides:

> If electronically stored information that should have been preserved in the anticipation or conduct of litigation is lost because a party failed to take reasonable steps to preserve it, and it cannot be restored or replaced through additional discovery, the court:
> (1) upon finding prejudice to another party from loss of the information, may order measures no greater than necessary to cure the prejudice; or
> (2) only upon finding that the party acted with the intent to deprive another party of the information's use in the litigation may:
>> (A) presume that the lost information was unfavorable to the party;
>> (B) instruct the jury that it may or must presume the information was unfavorable to the party; or
>> (C) dismiss the action or enter a default judgment.

FED. R. CIV. P. 37(e); *accord Castro v. Wal-Mart Real Estate Bus. Trust*, 645 F. Supp. 3d 638, 646 (W.D. Tex. 2022) (Rodriguez, J.)

To apply Rule 37(e) sanctions, a court must find four elements exist: (1) there is ESI that should have been preserved; (2) that ESI has been lost; (3) the ESI was lost because of a party's failure to take reasonable

2

steps to preserve it; and (4) the ESI cannot be restored or replaced through additional discovery. *See Cleary v. Am. Airlines, Inc.*, No. 4:21-cv-184-O, 2022 WL 5320126, at *7 (N.D. Tex. July 22, 2022) (O'Connor, J.).

Rule 37(e)(1) does not contain an "intent" requirement. A party does not have to act willfully, deliberately, intentionally, or with any objective or subjective bad faith. *See BHI Energy I Power Services LLC v. KVP Holdings, LLC*, 2024 WL 1607065 at *10 (N.D. Tex. Apr. 12, 2024) (Horan, M.J.). Under Rule 37(e)(1), after finding prejudice to another party from loss of the ESI, "[a] curative measure recognized by the Advisory Committee notes is barring evidence" – that is, "forbidding the party that failed to preserve information from putting on certain evidence." *Id.* (internal citations omitted).

## ANALYSIS

BTC argues that the Court should make a limiting jury instruction either allowing the jury to be made aware that TTG had a duty to preserve Mr. Hajra's text messages or assume that any evidence from the deleted text messages would have been unfavorable to TTG if the jury finds that TTG intentionally caused the messages to be deleted. *See* ECF No. 158. Alternatively, TTG argues that the auto-deletion of Mr. Hajra's text messages was merely an unforeseen accident and that BTC has failed to show that the messages cannot be restored or replaced, that they were prejudiced, or that TTG acted in bad faith. *See* ECF Nos. 154, 158. First, the Court must determine whether the four *Cleary* elements exist. Then, if they do, the Court must ask whether BTC was prejudiced and whether TTG intended to delete the text messages. The Court does so below.

### A. TTG's Handling of the ESI

1. <u>TTG lost texts that should have been preserved.</u>

It is indisputable that TTG had a duty to preserve Mr. Hajra's text messages. On October 3, 2022, TTG sent BTC executives a demand letter and litigation notice, to which BTC responded with their own litigation hold. *See* ECF No 150-1 at 2–12.

It is also indisputable that the texts in question were lost, as they were autodeleted off Mr. Hajra's iPhone. *See* ECF No. 154 at 9–10.

3

2. <u>The text messages were lost because of TTG's failure to take reasonable steps to preserve them.</u>

Here lies the first point of contention. BTC argues that TTG and its custodians did not take reasonable steps to preserve the text messages that were autodeleted off Mr. Hajra's phone. *See* ECF No. 156 at 1–4. TTG argues that they fulfilled their duty to preserve evidence under the litigation hold and that text messages were never specifically mentioned in the litigation hold and it was not reasonable for TTG to preserve anything outside of the company emails, records, documents, and Teams messages. *See* ECF No. 154 at 8–9.

The Court concludes that the failure to ensure the autodelete function was turned off when litigation holds were issued in September 2022, which would have preserved Mr. Hajra's text messages, constitutes a lack of reasonable steps to safeguard these messages. While perfection in preserving ESI within complex electronic systems is often impossible due to potential losses from routine, good faith operation and handling of devices, such as iPhones, this does not relieve a party from preventing the destruction of data under their control. *See* FED. R. CIV. P. 37, Advisory Committee Notes to the 2006 Amendment (stating that "a party is not permitted to exploit the routine operation of an information system to evade discovery obligations by allowing that operation to continue"). Mr. Hajra's failure to prevent data loss by not backing up his iPhone's contents or disabling automatic deletion functions was unreasonable, given his exclusive control over his text messages and the need to prevent their destruction.

Even if the Court determines that the loss of text messages resulted from an oversight rather than a deliberate decision, such a loss does not justify the incomplete production of text messages, as it could have and should have been prevented with reasonable proactive measures. Reasonable explanations for why deletions occurred do not suggest that reasonable steps were taken to prevent them.

Therefore, even if Mr. Hajra was unaware of the automatic deletion function, he is not excused from taking affirmative action to prevent such destruction. Furthermore, TTG and Mr. Hajra's ignorance of automatic deletions or how to back up their iPhones does not serve as a

defense, as their preservation obligation included learning how to prevent destruction or automatic deletion. This is especially true given the simplicity of disabling an automatic deletion setting on an iPhone and the default setting to preserve text messages indefinitely.

    3. <u>The text messages cannot be restored or replaced.</u>

Next, the Court must determine whether the messages can be restored or replaced. This is another point of contention. BTC argues that the text messages—in particular those between Mr. Hajra and Mr. Crase—cannot be recovered because both individuals had the autodelete function enabled on their iPhones. *See* ECF No. 149 at 8. TTG argues that BTC has failed to show how these deleted text messages cannot be restored or replaced. *See* ECF No. 154 at 13–15. TTG argues that BTC could subpoena the cell phone providers or file a motion to compel production of the remaining text messages. *Id.* at 13.

The Court is unconvinced by both of TTG's arguments. First, as BTC points out in their reply, cellular service providers cannot provide *contents* of text messages to third parties, even in response to a subpoena. *See* 18 U.S.C. § 2702. Second, TTG claims that there are no messages to be shared and that anything deleted is non-responsive as BTC has all the messages it needs involving Mr. Hajra from the other custodians. *See* ECF No. 158. However, it is not BTC's onus to request the production of materials that should have already been produced but for the actions of TTG.

Without any argument or support as to how the deleted text messages can be restored or replaced, the Court concludes that they cannot be.

**B. The Deletion of the Text Messages Prejudices BTC.**

The Court must now determine whether BTC was prejudiced by the deletion of Mr. Hajra's text messages. It determines that BTC was. "Prejudice to the non-culpable party can range from an utter inability to prove claims or defenses to minimal effects on the presentation of proof." *Jim S. Adler, P.C. v. McNeil Consultants, LLC*, 2023 WL 2699511, at *33 (N.D. Tex. Feb. 15, 2023) (Horan, M.J.) (quoting *Ashton v. Knight Transp., Inc.*, 772 F. Supp. 2d 772, 801 (N.D. Tex. 2011) (Boyle, J.)).

"Generally, the prejudice element is satisfied where a party's ability to present its case or to defend is compromised." *Id.*

Given the extensive nature of the text messages that *were* produced, BTC claims Mr. Hajra's text messages are critical to their case. *See* ECF No. 158. It is thus fair for BTC to argue that the texts that were deleted *could* be equally valuable to their case — there is no way for BTC to know. This falls well within the prejudice threshold laid out in *McNeil*.

TTG argues that the existence of deleted text messages cannot, in itself, establish prejudice. *See* ECF No. 154 at 16. Further, TTG claims that Mr. Hajra and Mr. Crase did not need to text because their offices adjoin. *Id.* Neither of these points convince. It is a circular argument that BTC must explain exactly what was in the deleted text messages in order to establish prejudice, especially when they never had the chance to review said text messages. BTC's ability to put forth their case has undoubtedly been impacted by a swath of who knows how many missing text messages, and the Court finds they have been prejudiced accordingly.

### C. TTG Did Not Intend to Delete the Text Messages.

The Court does not find that TTG or Mr. Hajra deliberately destroyed the lost text messages to prevent BTC from using them. Severe sanctions, such as (1) presuming the lost information was unfavorable to the party, (2) instructing the jury to presume the information was unfavorable, or (3) dismissing the action or entering a default judgment, can only be issued if it is determined that a party intended to deprive the other of ESI. *See* FED. R. CIV. P. 37(e)(2). If there is no intent but there is prejudice, as is the case here, the Court may impose sanctions that are no more severe than necessary to remedy the prejudice. *See* FED. R. CIV. P. 37(e)(1).

Given BTC has presented no evidence to suggest that TTG or Mr. Hajra intentionally destroyed the text messages, they have not demonstrated that it is more likely than not that TTG's actions exceeded gross negligence. *See* FED. R. CIV. P. 37, Advisory Committee Notes to the 2015 Amendment (negligent or grossly negligent behavior does not support the inference that lost ESI is unfavorable to the spoliating party

because information lost through negligence may have been favorable to either party).

TTG has produced thousands of documents, including all text messages from the other custodians which include messages from Mr. Hajra. *See* ECF No. 158. They have also provided possible explanations for the unintentional deletions, to which the Court cannot conclude that TTG intended to destroy the text messages. Inferring intent would require the Court to engage in speculation, which it is unwilling to do given the existence of reasonable alternative explanations.

The Court will issue a limiting jury instruction during trial but will decide what that specific instruction is after hearing the evidence presented at trial and how the text messages fit into the narrative of both Parties' cases in chief.

## CONCLUSION

Mr. Hajra's text messages were deleted and were unable to be presented to BTC for their review. Though this was likely unintentional and was the result of an iPhone setting, TTG failed to take reasonable steps in September 2022 to prevent such a deletion. As a result, TTG has violated Federal Rule of Civil Procedure 37, entitling BTC to a limiting jury instruction at trial after the Court has seen how the deleted text messages will be used. Accordingly, BTC's motion for spoliation sanctions is **GRANTED**.

**SO ORDERED** on this **23rd day of July 2024.**

_____
Mark T. Pittman
UNITED STATED DISTRICT JUDGE