| | | |
|---|---|---|
| **THE TRADE GROUP, INC.,** | § | |
| | § | |
| *Plaintiff,* | § | |
| | § | |
| **v.** | § | **CIVIL ACTION NO. 4:23-CV-00555-P** |
| | § | |
| | § | |
| **BTC MEDIA, LLC, and BTC, INC.,** | § | |
| | § | |
| *Defendants.* | § | |

## DEFENDANTS' TRIAL BRIEF ON BTC, INC.'S LOANS TO DAVID BAILEY

Seeking to distract from its own bad conduct and dishonest billing, TTG's trial strategy is to paint BTC CEO David Bailey, who is not a party to this action, as some sort of crypto cowboy. TTG's summary-judgment brief began with an explicit attempt to compare Mr. Bailey to convicted cryptocurrency trader Sam Bankman-Fried. ECF No. 83 at 12. The business of BTC—an events and media company focused on educating people about Bitcoin, not serving as a cryptocurrency broker—bears no resemblance to Bankman-Fried or his companies. TTG nonetheless wants the jury to think they are cut from the same cloth. Instead of defending the legitimacy of the $17 million bill it seeks to recover in this case, TTG wants to turn this contract dispute into a story about supposed corporate misfeasance that has nothing to do with TTG's work on Bitcoin 2022.

Defendants are not seeking to hide behind BTC Media's corporate form. They have already stipulated to joint and several liability should a judgment be entered in TTG's favor—the exact relief TTG's alter ego claim seeks. Such a stipulation would bring into focus the central issue of trial: whether TTG's bill(s) are legitimate.

TTG won't accept Defendants' stipulation because it would prefer to avoid the merits. And for good reason. None of its employees can explain how the Google Sheet ostensibly used to bill BTC ties to TTG's costs or the markups charged to BTC. So TTG would rather spend the Court and the jury's limited time talking about Mr. Bailey's house and truck in Puerto Rico. As explained below, the Court should not permit TTG to do so.

**ARGUMENT**

Evidence of loans BTC, Inc. made to David Bailey or Mr. Bailey's personal use of BTC, Inc.'s corporate funds is not relevant or material to Plaintiff's claims. "Irrelevant evidence is not admissible." FED. R. EVID. 402. Evidence is relevant only if "it has any tendency to make a fact more or less probable" and "the fact is of consequence in determining the action." FED. R. EVID. 401. TTG's pleadings are devoid of any allegation that is made more probable by evidence of loans BTC, Inc. made to Mr. Bailey or Mr. Bailey's personal use of BTC, Inc.'s corporate funds. Moreover, Mr. Bailey's loans or personal use of BTC, Inc.'s corporate funds are not of consequence in determining the action.

TTG originally filed its complaint against BTC Media, LLC. ECF Nos. 1, 6. After some discovery, TTG amended its complaint (without opposition) to add BTC, Inc. as a Defendant. ECF No. 38. TTG's operative complaint alleges Defendants are jointly and severally liable because BTC, Inc. is BTC Media's alter ego and because BTC Inc. and BTC Media operate as a single business entity. ECF No. 38 at 10–13. TTG further claims Defendants are jointly and severally liable because BTC Inc. used BTC Media as a sham to perpetuate fraud and the two operate in a principal/agent relationship. ECF No. 38 at 13–14. TTG's proposed jury instructions are aligned with its allegations. ECF No. 112 at 56. Proposed Instruction No. 6 states that Plaintiff must prove "(1) BTC Media and [BTC, Inc.] operate as a single economic entity, and (2) an element of

injustice or unfairness." ECF No. 112 at 56. The factors for considering the first element include: "(1) Whether BTC Media was adequately capitalized; (2) Whether BTC Media was solvent; (3) Whether corporate formalities were observed; (4) Whether BTC Media siphoned company funds; and (5) Whether, in general, BTC Media simply functioned as a façade for BTC Inc." ECF No. 112 at 56.

The crux of these allegations is that BTC, Inc.—the parent company—abused the corporate form of BTC Media—the subsidiary—so that BTC, Inc. should be liable for any judgment against BTC Media. Absent from the complaint or proposed instructions is any allegation that Mr. Bailey—as one of multiple, individual shareholders of BTC, Inc.—abused the corporate form of BTC, Inc. *See generally* ECF No. 38. Evidence regarding loans to Mr. Bailey or his personal use of BTC, Inc.'s corporate funds has no tendency to show that BTC, Inc. abused the corporate form of BTC Media. Such evidence does not help explain the corporate structures of BTC Inc. and BTC Media. Any evidence regarding Mr. Bailey's loans or personal use of corporate funds is thus not relevant or material to a fact of consequence.

TTG argues the evidence is relevant to "Defendants' motive behind breaching the agreement." ECF No. 167 at 13. But courts "do not look to the motive or the state of mind of the defaulting party in determining contract damages, but rather, [they] look to the amount of money that will make the injured party whole." *Fratelli Gardino S.p.A. v. Caribbean Lumber Co.*, 587 F.2d 204, 209 (5th Cir. 1979); *see also Shell Oil Co. v. HRN, Inc.*, 144 S.W.3d 429, 435 (Tex. 2004) ("Premising a breach of contract claim solely on assumed subjective motives injects uncertainty into the law of contracts and undermines one of the UCC's primary goals—to promote uncertainty and predictability in commercial transactions." (quotation omitted)); *Unit Drilling Co. v. Enron Oil & Gas Co.*, 108 F.3d 1186, 1194 (10th Cir. 1997) (excluding proffered Rule 404(b)

3

evidence because "[t]he probative value of the evidence was not great because Enron's motive is not at issue in a breach of contract case" and evidence carried several Rule 403 dangers); *Weitz Co. v. MacKenzie House, LLC*, 665 F.3d 970, 975 (8th Cir. 2012) (excluding proffered Rule 404(b) evidence "[t]he only claims in this case are for breach of contract. The issue at trial was whether the parties complied with the contract. Proving a breach here does not put motive, intent, plan or knowledge at issue."). Motive is simply not relevant to whether there was an agreement that Defendants breached and whether TTG has been harmed.[1] So the evidence cannot be admitted on that ground.

Even if this Court decides evidence of Mr. Bailey's loans or personal use of BTC, Inc.'s corporate funds is relevant, its probative value is substantially outweighed by the danger of unfair prejudice, confusing the issues, misleading the jury, wasting time, or needlessly presenting cumulative evidence. *See* FED. R. EVID. 403. *First*—even assuming the evidence is relevant—it has virtually no probative value. TTG's own trial exhibits show the loans from BTC, Inc. to Mr. Bailey were made in October and December 2021—before the TTG's budget estimate for Bitcoin 2022 was even presented to BTC in January 2022 and well before the Deposit Invoice was signed in April 2022 or the Final Invoice presented to BTC in Summer 2022. *See* Pl.'s Objected-To Exs. 260 & 261.

*Second*, Defendants have offered to stipulate to joint and several liability—the very relief TTG's alter ego claim seeks. "Factual stipulations are binding on parties, having 'the effect of withdrawing a fact from issue and dispensing wholly with the need for proof of the fact.'" *EEOC v. Serv. Temps Inc.*, 679 F.3d 323, 330 (5th Cir. 2012) (quoting *Christian Legal Soc'y v. Martinez*,

---

[1] *Cf. Tiras v. Bailey Props., LLC*, No. G-14-180, 2015 WL 6506178, at *2 (S.D. Tex. Oct. 27, 2015) ("Nor are punitive damages recoverable for breach of contract.").

561 U.S. 661, 677–78 (2010)). Permitting TTG to present evidence on a stipulated issue would necessarily waste the Court and the jury's time and needlessly present cumulative evidence.

*Third*, admitting such evidence would unfairly prejudice Defendants. TTG's strategy is a not-so-subtle way of introducing evidence of the finances of Mr. Bailey—a nonparty. Texas courts have "long recognized the potential for undue prejudice in allowing the jury to consider a litigant's financial status." *See Southwestern Elec. Power Co. v. Burlington N. Railroad Co.*, 966 S.W.2d 467, 471 (Tex. 1998); *accord Reliance Steel & Aluminum Co. v. Sevcik*, 267 S.W.3d 867, 870 (Tex. 2008). Because such evidence is "often irrelevant and highly prejudicial, Texas courts historically have been extremely cautious in admitting evidence of a party's wealth." *Id.* Indeed, Texas law *does not even permit discovery of a party's net worth* without first demonstrating a substantial likelihood of success on a claim for exemplary damages. *See* TEX. CIV. PRAC. & REM. CODE § 41.0115(a).

TTG seeks to use evidence of BTC, Inc.'s loans to Mr. Bailey and Mr. Bailey's personal use of corporate funds not to advance its alter ego or contract claims, but to portray Mr. Bailey as someone who "commingles [his] companies' funds and has personally used them to buy his multi-million-dollar home in the Caribbean" to the jury. ECF No. 83 at 1. The undue prejudice from this narrative is obvious, especially considering Mr. Bailey is a nonparty. And as explained, the veil-piercing claim runs from BTC Media to its parent company, BTC, Inc. It does not run from BTC, Inc. to any individual shareholder—of whom Mr. Bailey is merely one of several. Permitting evidence about Mr. Bailey's loans from BTC, Inc. or personal use of BTC, Inc.'s corporate funds thus risks confusing the issues and misleading the jury as well. The evidence should be excluded under Rules 401, 402, and 403.

**CONCLUSION**

For these reasons, the Court should exclude any evidence or argument about BTC, Inc.'s loans to David Bailey or Mr. Bailey's personal use of BTC, Inc.'s corporate funds. This includes any testimony about Mr. Bailey's loans from BTC, Inc., Mr. Bailey's personal use of the corporate funds of BTC, Inc., Mr. Bailey's personal finances, as well as the following objected-to trial exhibits: Plaintiff's Exhibits 234, 249, 250, 251, 253, 254, 255, 258, 260, 261, 320, 335, 344, 345, 348.

Dated: August 25, 2024.                    Respectfully submitted,

/s/ Colin P. Benton
David J. Drez III
State Bar No. 24007127
david.drez@wickphillips.com
Colin P. Benton
State Bar No. 24095523
colin.benton@wickphillips.com

**WICK PHILLIPS GOULD & MARTIN LLP**
100 Throckmorton Street, Suite 1500
Fort Worth, Texas 76102
Telephone:     (817) 332-7788
Facsimile:     (817) 332-7789

-and-

**BRADLEY ARANT BOULT CUMMINGS LLP**

E. Sawyer Neely
State Bar No. 24041574
sneely@bradley.com

Fountain Place
1445 Ross Avenue, Suite 3600
Dallas, Texas 75202
Telephone:   (214) 939-8700
Facsimile:   (214) 939-8787

Harold D. Mooty, III, (*Admitted PHV*)
AL Bar No. ASB-4561-A35M
hmooty@bradley.com
Hunter W. Pearce, (*Admitted PHV*)

AL Bar No. ASB-1115-G46R
*hpearce@bradley.com*

200 Clinton Avenue West, Suite 900
Huntsville, AL 35801
Telephone: (256) 517-5100
Facsimile: (256) 517-5200

**ATTORNEYS FOR DEFENDANTS**

## CERTIFICATE OF SERVICE

This is to certify that on August 25, 2024, a true and correct copy of the foregoing document was filed and served to all counsel of record via the Court's CM/ECF Filing System.

*/s/ Colin P. Benton*
Colin P. Benton